UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ALLIANZ GLOBAL CORPORATE &
SPECIALTY, N.A., f/k/a ALLIANZ (DC)
INSURANCE COMPANY, as subrogee of
Daimler Chrysler Services, N.A.

        Plaintiff,

  -v-                                                                                No. 08 Civ. 563 (LTS)

DOUGLAS L. SACKS,

        Defendant.

-------------------------------------------------------x

DOUGLAS L. SACKS,

       Plaintiff,

  -v-                                                                             No. 08 Civ. 8902 (LTS)

EXECUTIVE RISK INDEMNITY, INC.,

       Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Allianz Global Corporate & Specialty ("Allianz") brings this action against Douglas L. Sacks ("Defendant"), seeking indemnification for a settlement paid in connection with a personal injury action ("the Allianz Action"). In a related but unconsolidated action, Sacks seeks a declaratory judgment that Executive Risk Indemnity, Inc. ("ERII"), must indemnify him for any judgment rendered against him in the Allianz Action ("ERII Action"). The Court has jurisdiction of both actions pursuant to 28 U.S.C. § 1332.

In the Allianz Action, Allianz and Sacks have cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Allianz seeks a determination that it is entitled to indemnification in the amount of $975,000, plus interest, and attorney's fees and costs for both the underlying personal injury action and the case at bar. Sacks, as defendant, seeks dismissal of all claims against him. Cross-motions for summary judgment are also pending in the ERII Action. Sacks, as plaintiff, seeks a declaratory judgment, and ERII seeks dismissal of the claims against it.

The Court has reviewed thoroughly and considered carefully all parties' submissions. For the following reasons: (1) Allianz's motion for summary judgment is granted in part and denied in part; (2) Sacks's motion for summary judgment in the Allianz Action is granted in part and denied in part; (3) ERI's motion for summary judgment is granted; and (4) Sacks's motion for summary judgment in the ERII Action is denied.

BACKGROUND

The following facts are undisputed.[1]

---

[1] The local rules of this court provide that, in opposing a motion for summary judgment, the non-movant must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." S.D.N.Y. Local Civ. R. 56.1(b). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." S.D.N.Y. Local Civ. R. 56.1(c) (emphasis added). The parties in both actions are largely in agreement as to the material facts of the case. However, in both the Allianz Action and the ERII Action, Sacks has failed to submit a response to the opposing party's 56.1 Statement. Therefore, Court has deemed the facts enumerated in Allianz's and ERII's 56.1 statements to be admitted under Rule 56.1(c). In any

*Lease and Insurance Policies*

On or about December 6, 2003, Sacks entered into a lease agreement with the Mercedes Benz Credit Corporation ("MBCC") for a 2004 Mercedes Benz automobile (Allianz's Local Rule 56.1 Statement of Undisputed Facts In Support of Motion for Summary Judgment ("Allianz 56.1 St.") ¶ 3.)  The lease includes an indemnification clause in which Sacks agrees that "[i]f [MBCC is] subjected to any claims, losses, injuries, expenses, or costs related to the use, maintenance, or condition of the vehicle, [Sacks] will pay all of [MBCC's] resulting costs and expenses, including attorney's fees." (Cunningham Aff., Ex. B ("Exemplar Lease") at ¶ 23.)

MBCC's rights and obligations under the lease were thereafter assigned to DCFS Trust.  (Allianz 56.1 St. ¶ 4.)  DCFS Trust maintained insurance coverage, provided by Allianz, on each vehicle it owned or leased, including Sacks's new vehicle which was covered under policy number 2001001 (the "Allianz Policy").  (Id. ¶ 5.)  The body of the Allianz Policy provides that "[t]he following are 'insureds': . . . [a]nyone else while using with your permission a covered 'auto' you own, hire or borrow . . . ."  (Croster Aff., Ex. A at SACKS 0093.)  An endorsement entitled "Leasing Concerns - Contingent Liability Coverage" modifies the policy document by providing that "liability coverage and any required no-fault insurance provided by the policy for a covered 'auto' applies, subject to the following provisions: . . . for the lessee . . . no insurance is provided by this policy."  (Id. at SACKS 0120.)  Another endorsement entitled "Leasing Concerns - Second Level Coverage" further modifies the policy document by providing that "for the difference between the limit of insurance [provided by the policy] and the limit of insurance shown in any

---

event, Sacks has not proffered any evidence contradicting his adversaries' statements of uncontested fact.  The facts recited in this opinion thus are not contradicted by any evidence in the record.  Citations to the parties' S.D.N.Y. Local Civil Rule 56.1 Statements incorporate by reference citations to the underlying evidentiary submissions.

leasing agreement that requires a lessee to provide primary insurance for you, ["]who is an insured["] applies except that none of the following is an 'insured': . . . the lessee . . . ." (Id. at SACKS 0121 (emphasis omitted).)

(Croster Aff., Ex. A., at SACKS 0121).  It is undisputed, based upon both Allianz's and Sacks's submissions, that the endorsement containing this provision was incorporated in the original insurance policy.  (Id.; Vasile Aff., Ex. H).  Pursuant to the requirements of his lease with MBCC, Sacks acquired automotive insurance on the vehicle through Great Northern Insurance Company with a limit of $300,000 per occurrence (the "Chubb Policy").  (Allianz 56.1 St. ¶ 8.)

*The Underlying Accident, Injury, and Lawsuit*

On the morning of December 15, 2003, Sacks was exiting a parking garage in New York, New York.  (Id. ¶ 14.)  As Sacks edged out of the garage and into the street, he was involved in a collision with a taxi cab operated by Toufiqu Iman.  (Id. ¶15; Sacks's Memorandum of Law in Support of his Motion for Summary Judgment in the Allianz Action ("Sacks Allianz Mem. of Law") at 2.)  Deborah Hagaman, a passenger in the taxi cab, suffered significant injuries as a result of the collision, including injuries to her shoulder, neck, and back.  (Allianz 56.1 St. ¶ 17.)  Her injuries necessitated three surgeries, including (a) a cervical diskectomy, spondylectomy and bone graft of her cervical vertibrae; (b) a debriedment and repair of her right rotator cuff; and (c) a spinal laminectomy and fusion of her lumbar vertebrae.  (Id.)

Following the accident and her injury, Ms. Hagaman filed suit against Sacks, DCFS Trust, MBCC, Iman, and Y Talli Taxi, Inc. (the "Hagaman Action").  (Id. ¶16; Buckley Decl., Ex. D.)  Following multiple court-ordered mediation sessions at which Sacks was represented by both appointed counsel and his personal counsel (Allianz 56.1 St. ¶ 21), Ms. Hagaman settled with the defendants for $1,275,000.  (Sacks's Statement Pursuant to Rule 56.1 in the Allianz Action ("Sacks

Allianz 56.1 St.") ¶ 6.)  Sacks's primary insurer, Great Northern Insurance Company, contributed to the settlement the maximum allowable payment under Sacks's policy, $300,000.  (Allianz 56.1 St. ¶ 20.)  Allianz, on behalf of DCFS Trust, paid the remaining $975,000, without releasing Sacks from his contractual indemnity obligations to Allianz.  (Id. ¶¶ 18-19.)  At the time the settlement was reached, Allianz, on behalf of MBCC as defendant in the Hagaman Action, had a pending motion to amend its Answer to include a cross claim for indemnification against Sacks, which, given the existence of a settlement, the court denied as moot.  (Executive Risk Indemnity, Inc.'s Rule 56.1 Statement of Undisputed Material Facts ("ERII 56.1 St.") ¶¶ 8, 11.)  Allianz thereafter commenced the Allianz Action against Sacks.

Before or during the pendency of the Hagaman Action – and prior to either the Allianz Action or the ERII Action – both Sacks's personal attorney and his insurance company-appointed attorney developed the good faith belief that a finder of fact was likely to find Sacks liable for the accident.  (Allianz 56.1 St. ¶ 22.)  For example, on May 4, 2006, an attorney at Perez, Furey & Varvaro wrote to Sacks's insurance carrier and noted that "our client [Sacks] may have some liability for this action and as you know there is limited coverage because of his failure to renew his excess policy."  (Buckley Decl., Ex. K at SACKS 0526.)  Sacks's personal attorney wrote in an April 21, 2005, letter that "[t]he taxi cab had the right of way and our client [Sacks] pulled out from a parking garage into traffic, therefore liability is probable."  (Buckley Decl., Ex. K at SACKS 0468.)

Goldman Sachs, Sacks's employer, was issued a Personal Excess Liability Policy for the policy period spanning January 1, 2003, to January 1, 2004 ("2003 Excess Policy").  (ERII 56.1 St. ¶ 20.)  Sacks was not an insured under that policy.  (Id.)  Sacks was, however, an insured under the Personal Excess Liability Policy issued to Goldman Sachs by ERII for the period spanning

January 1, 2007, to January 1, 2008 ("2007 Excess Policy").  (Id. ¶ 21.)  The policy provided coverage for, inter alia, "damages a covered person is legally obligated to pay for personal injury or property damage, caused by an occurrence . . . in excess of damages covered by the underlying insurance."  (Id. ¶ 22.)  An "occurrence," for purposes of the policy, is defined as "a loss or accident to which this insurance applies occurring within the policy period."  (Id. ¶ 23.)

On August 17, 2007, well after the assessments by Sacks's attorneys that he was likely to be found liable for the accident, Sacks purchased coverage under the 2007 Excess Policy and sought indemnification by ERII for any liability arising from the underlying accident in excess of the maximums on his Chubb Policy .  (Id. ¶ 29.)  ERII disclaimed coverage under the 2003 Excess Policy on August 17, 2007, and April 22, 2008, because Sacks was not an insured under that policy.  (Id.)  On September 28, 2008, ERII again disclaimed coverage under the 2003 Excess policy because Sacks was not an insured, and also disclaimed coverage under any policies subsequent to 2003, because the occurrence did not occur during the coverage period of any such policies.  (Id. ¶ 35.)  Sacks commenced the ERII Action on October 16, 2008, seeking a declaratory judgment that ERII must indemnify him for any damages awarded in the Allianz Action.  (Id. ¶ 18; ERII Compl.)

## DISCUSSION

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in its favor.  Rubens v. Mason, 527 F.3d 252, 255 (2d Cir. 2008) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)).  "[M]ere conclusory allegations, speculation or conjecture" will not suffice to defeat summary judgment.  Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996); see also Fed. R. Civ. P. 56(e).  An attorney's unsupported statements in a brief are not evidence, Kulhawik v. Holder, 571 F.3d 296, 298 (2d Cir. 2009) (per curiam), and will not be credited by the Court when determining whether a party has established a necessary factual element of its claim, Ner Tamid Congregation of North Town v. Krivoruchko, 638 F. Supp. 2d 913, 917 n.1 (N.D. Ill. 2009).

The Allianz Action

*Sacks's Estoppel, and Antisubrogation Rule Arguments*

Starting from the premise that he was an "insured" under the Allianz policy, Sacks argues that Allianz is estopped from denying him insured status because it did not issue a disclaimer to him of such coverage and that, because Allianz is his insurer and cannot deny him coverage, New York's antisubrogation rule (i.e., the rule that an insurer cannot seek indemnity from its insured for a covered claim) precludes the instant lawsuit.  Sacks' argument fails in all respects.

Sacks relies principally on Allianz Insurance Co. v. Otero, 353 F. Supp. 2d 415 (S.D.N.Y. 2004), for his contract interpretation argument. There the court, reviewing a policy form and endorsements substantially identical to those at issue here, found that general language in the "Who Is An Insured" provision of the body of the policy form, providing that "Anyone else while using with [the lessor-insured's] permission a covered 'auto'" is an "insured" was not completely superseded by an endorsement expressly modifying the policy form to exclude the lessee from "who is an insured" for purposes of determining the difference between general policy limits and those applicable when a relevant lease requires the lessee to provide primary insurance. See Otero, 353 F. Supp. 2d at 424-426; Ex. A to Crosler Decl. at SACKS 101, SACKS 121. The Otero Court held that the lessee (actually, a person using the car with the lessee's permission) was an insured up to the amount for which the lessee was required to obtain primary insurance, and that Allianz therefore could seek indemnification for losses incurred above that primary insurance amount.

While it is possible to take issue with Otero's finding of "insured" status,[2] it is not necessary to delve into that issue to resolve the instant motion because Allianz does not here seek indemnification from Sacks for any amounts within the limits of his primary insurance.

Sacks argues that, because the endorsement limits the general language in the body of the policy, it operates as an exclusion as to which Allianz was required by New York Insurance Law §3420(d)(2) to make a timely disclaimer and that, having failed to issue such a disclaimer,

---

[2] It appears that the language of the endorsement might be read to exclude lessees entirely from the class of "insureds" as to which there was an obligation to provide primary insurance under the Allianz policy. Another endorsement declares that "no insurance is provided by this policy" for "the lessee." (See Croster Aff., Ex. A at SACKS 0120.)

Allianz is estopped from denying that he is covered under its policy for the full amount of the loss.  (See Sacks Allianz Mem. of Law at 6 and cases there cited.)  Sacks' argument that there was any coverage above the limit of his own primary insurance has no basis, however, in the plain language of the policy and endorsements, and no support in the case law.  In that Allianz does not seek indemnity from him for any amounts within the policy limit, his estoppel argument is inapposite.  Indeed, it is well-settled New York law that an insurer need not disclaim coverage where no coverage exists.  Worcester Ins. Co. v. Bettenhauser, 95 N.Y.2d 185, 188 (2000) ("Disclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion.  Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.").  An insurer need only disclaim coverage if such coverage exists under the policy in the first instance.

Sacks' antisubrogation rule argument fails as well.  Even if Sacks was an insured under the Allianz Policy as to the amount for which he was required to obtain primary insurance, he would not be entitled to evade his obligation to indemnify Allianz for the $975,000 paid, in excess of the $300,000 provided by Sacks's primary insurance, to settle the Hagaman Action.  It is black letter law that New York law does not bar insurance companies from seeking indemnification for settlements or judgments that exceed the limits of an insurance policy.  See ERLAC v. Ward, 96 N.Y.2d 58, 78 (2001) ("antisubrogation principles do not bar [an insurer] from seeking indemnification for amounts exceeding the statutory limits"); Curran v. City of New York, 234 A.D.2d 254, 255 (1st Dept. 1996).

*Contractual Indemnification*

In an indemnity action, one party seeks to shift the entire burden of an adverse judgment to another based on the other party's responsibility for the harms. See Tokio Marine & Fire Ins. Co, Ltd. v. McDonnell Douglas Corp., 465 F. Supp. 790, 794 (S.D.N.Y. 1978). Under well-settled New York law, a party may be bound to indemnify another either by contract or by implication, under common law. McFall v. Compagne Maritime Begle, S.A., 304 N.Y. 314, 328, 331 (1952). Contractual indemnification "springs from a contract, express or implied, and full, not partial, reimbursement is sought." Id. at 328. Allianz asserts in its motion for summary judgment that it is entitled to recover the $975,000 it paid in settlement of the Hagaman Action under the principles of both contractual and common law indemnification.

The lease agreement between MBCC and Sacks contains an express indemnification clause: "If you [MBCC] are subjected to any claims, losses, injuries, expenses, or costs related to the use, maintenance, or condition of the vehicle, I [Sacks] will pay all of your resulting costs and expenses, including attorneys' fees." (Exemplar Lease at ¶ 23.) The enforceability of this very clause has consistently been upheld in this circuit. See Otero, 353 F. Supp. 2d 415, Allianz Insurance Company v. Cavagnuolo, 2004 WL 1048243 (S.D.N.Y. 2004) (applying New Jersey law), and Allianz Insurance Company v. Lerner, 296 F. Supp. 2d 417 (E.D.N.Y. 2003).

In an attempt to evade his indemnification obligation, Sacks advances a unique but ultimately unpersuasive interpretation of the indemnification clause: that the indemnification clause obligates him to pay only MBCC's "costs and expenses, including attorney's fees" but not the $975,000 paid in settlement. (Sacks Allianz Mem. of Law at 12.) He interprets the indemnification clause as comprising two lists: a "description of the events which trigger the indemnity obligation" ("claims, losses, injuries, expenses or costs"), and "a description of the expenditures to be indemnified" ("costs and expenses, including attorney's fees"). (Id.) However, in New York

> [t]he meaning of the language used must be found in the common sense and common speech of the average person in the light of the reasonable expectation and purpose of the ordinary businessman.  The subjective interpretation of the parties is of no moment when the words of the agreement, viewed in proper context, provide an unmistakable meaning.

IBM Credit Financing Corp. v. Mazda Motor Mfg. (USA) Corp., 170 Misc. 2d 15, 22 (1st Dept. 1996) (internal citations omitted).  The plain language of the indemnification clause "provide[s] an unmistakable meaning," namely that Sacks must pay MBCC's liabilities and expenses resulting from the Hagaman Action.

In a further attempt to avoid his contractual obligation, Sacks seeks – through an argumentative affidavit sworn to by his attorney – to frame a factual issue as to whether the print size of the lease agreement was so small as to make the agreement procedurally unconscionable.[3]  To be enforceable under New York law, a contract must be "clear and legible" and be printed in at least an 8-point font.  N.Y. C.P.L.R. 4544 (McKinney 2007).  See General Electric Capital Auto Lease, Inc., 239 A.D.2d 462, 463 (2d Dept. 1997) (finding N.Y. C.P.L.R. 4544 applicable to automotive leases).

It is undisputed that Allianz's original copy of Sacks's signed lease was lost during the pendency of the Hagaman Action.  In this action, Allianz has proffered a reduced-sized, scanned copy of the agreement signed by Sacks ("resized lease"), as well as a full-sized exemplar copy of

---

[3]  It is worth noting that even if Sacks's arguments on procedural unconscionability were potentially persuasive, they would not suffice to create an issue of fact for a jury.  Unconscionability is a question of law.  See Sablosky v. Gordon Co., 73 N.Y.2d 133, 138 (1989) ("The doctrine of unconscionability contains both substantive and procedural aspects, and whether a contract or clause is unconscionable is to be decided by the court against the background of the contract's commercial setting, purpose and effect . . . .  Substantively, courts consider whether one or more key terms are unreasonably favorable to one party." (emphasis added)).

the lease ("exemplar lease").[4]  (See generally Smith Aff.)  Sacks's attorney insinuates that the resized lease reflects the font actually used on the lease signed by Sacks.  He also claims that

> The exemplar which allegedly 'accurately demonstrates the actual size of the typeface' is also violative of the statute.  One need only type a phrase or sentence from the exemplar after setting the font to eight points, print it, and compare it to the source.  Even to the naked eye, the type size measures less than eight points.

(Vasile Aff. ¶¶13-15 (emphasis and paragraph breaks removed).)  The Court finds the argument to be disingenuous and entirely meritless.  Sacks has not testified, nor has he produced any evidence[5] controverting Allianz's sworn assertions that the resized lease was a scaled-down copy of the exemplar lease.  Furthermore, Mr. Vasile's sworn statement that "even to the naked eye, the type size [on the exemplar lease] measures less than eight points" is demonstrably false.  The Court's own examination of the exemplar lease revealed that the font is equivalent to 8-point Times New Roman font.  Sacks offers nothing more than metaphysical doubt, and has therefore failed to demonstrate the existence of a *genuine* issue of material fact regarding the legitimacy of the contract sufficient to be put to a jury.

*Common Law Indemnification*

Even if the contractual indemnification clause could be found to be void for unconscionability, Allianz would nonetheless be entitled to common law indemnification.  "It is

---

[4] Both are attached as exhibits to the affidavit of Janet D. Cunningham, who avers upon personal knowledge that the resized lease was an accurate copy of the actual lease signed by Sacks, and that the actual lease signed by Sacks was the same size as the exemplar lease.  (See generally, Cunningham Aff; Id., Ex. A, B.)

[5] The Court notes that the exemplar lease has attached a carbon-copy of the lease identified as the customer's copy.  Presumably, Sacks has a copy of the original lease in his possession and could easily prove that the original lease, as printed, did not comport with CPLR 4544.  He has not attempted to do so.

well-settled in New York that a passive tortfeasor whose liability is premised entirely upon the active wrongdoing of another may recover against the active tortfeasor on a claim of implied indemnity." Otero, 353 F.2d at 424. Under the common law principle of indemnification,

> one who was cast in damages for negligence could, if his negligence were merely 'passive', nevertheless shift his liability to the tort-feasor whose negligence was considered 'active'. The 'actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act'.

D'Ambrosio v. City of New York, 55 N.Y.2d 454, 461 (1982) (citations omitted). See also Amusement Industry, Inc. v. Stern, 693 F. Supp. 2d 319, 326-27 (S.D.N.Y. 2010) (while common law indemnity is unavailable where the proposed indemnitee bears some degree of fault, it remains appropriate where the indemnitee is subject to "vicarious liability without actual fault" (internal quotation marks and citation omitted)).

Here, it cannot be disputed that Allianz, as MBCC's subrogee, is a wholly passive tortfeasor whose liability was entirely vicarious and who has paid a substantial sum to rectify the injuries caused by Sacks's wrongdoing. Sacks's operation of the vehicle caused the underlying suit and he is therefore obligated to indemnify the costs incurred by Allianz as a result of his actions.

*The Underlying Hagaman Settlement is Reasonable*

Sacks opposes Allianz's summary judgment motion and supports his own motion by claiming that the underlying settlement agreed to by Allianz was unreasonable and made in bad faith. He claims that, because Allianz intended to avoid ultimate liability and to seek indemnification from Sacks, it negotiated callously without consideration for the reasonableness of the settlement value. Although he argues that the question of reasonableness is one for a jury, he nevertheless asserts that the question of whether Allianz "owed a duty to Sacks not to 'tank' the

negotiations" (Sacks Allianz Mem. of Law at 16 n.19), or in other words, whether the settlement was reached in bad faith, is a question of law.

Under New York law, parties are "bound by any reasonable good faith settlement made by the current plaintiff in the earlier action," provided that constructive notice or probable liability can be established.  See Horn Const. Co. v. MT Sec. Serv. Corp., 489 N.Y.S.2d 254, 255 (2d Dept. 1985) (internal quotation marks and citation omitted).  Therefore, the proper inquiry is whether there is a genuine dispute as to whether (1) Sacks had reasonable constructive notice of the settlement; (2) the settlement value was reasonable; or (3) the settlement was reached in good faith.

First, Allianz points to Sacks's position as a defendant in the underlying Hagaman Action and his own attorney's correspondence to establish that Sacks had notice.  Sacks offers no evidence to refute this contention and has admitted the facts underlying Allianz's argument.  See Fed. R. Civ. Proc. 56(e); Local Civ. R. 56.1(c).  He has failed to raise a genuine issue of material fact as to the first element.  Second, in asserting that the settlement reached was reasonable, Allianz has provided documentation of jury verdicts in comparable cases (Buckley Decl. Ex. N).  Sacks points to no admissible evidence, resting instead on conclusory denials contained within his briefs, that the value of the Hagaman settlement was unreasonable.  Because Sacks "must do more than simply show that there is some metaphysical doubt as to the material facts," Caldarola, 298 F.3d at 160, and because an attorney's unsupported statements in a brief will not be credited by the Court when determining whether a party has established a necessary factual element of its claim, Ner Tamid, 638 F. Supp. 2d at 917 n.1, Sacks has failed to proffer any evidence upon which any rational jury could find the settlement value unreasonable.  Finally, Sacks has failed to raise any genuine material dispute over whether the settlement was made in good faith.  He simply claims that "[since] Allianz abandoned Sacks when negotiating its settlement payment in the Hagaman Action,

the payment made by Allianz is unreasonable as a matter of law." (Sacks' Allianz Mem. of Law at 16.) He points to no evidence to support this conclusory argument,[6] and has therefore failed to present a triable issue of fact for a jury.

*Allianz is Entitled to Recover Attorney's Fees and Costs for the Hagaman Action*

Allianz seeks recovery of attorney's fees, both for the underlying Hagaman Action and for the Allianz Action. The express indemnification clause included in the contract between Sacks and Allianz provides that Sacks agreed to reimburse "all of [MBCC's] resulting costs and expenses, including attorney's fees." (Exemplar Lease ¶ 23 (emphasis added).) Thus, in accordance with the contractual agreement between parties, the Court finds that Allianz is entitled to recover attorney's fees and costs for the Hagaman Action on behalf of its insured. Allianz may not, however, recover costs incurred as a result of this indemnity action: as Sacks correctly points out in

---

[6] In his moving papers in the Allianz Action, Sacks claims that facts establishing Allianz's bad-faith motive are set forth in his own affidavit. The totality of those "facts" are set forth here:

> ¶ 17. I learned that an attorney named Michael Buckley had attended a court sponsored mediation on behalf of Mercedes Benz. I also learned that Mr. Buckley offered a very large sum of money at this mediation, and that he announced an intent to pursue a 'cross claim' against me unless I also agreed to pay a very large sum of money.
>
> ¶18. I verily believe that the Hagaman settlement was not made in good faith. In fact, I strenuously objected, and refused to consent that it was reasonable, although Mercedes Benz pressured me to do so by threatening to sue me. I am convinced that Mr. Buckley and Mercedes Benz planned, all along to pay any amount, even if unreasonable, on the assumption that this Court would order me to pay them back. I ask this Court to recognize the inherent unfairness of this unwarranted action.

(Vasile Aff., Ex. J.) These assertions are "mere conclusory allegations, speculation or conjecture" that are insufficient to create a genuine, triable issue of fact. Cifarelli, 93 F.3d at 51.

his motion for summary judgment in the Allianz Action, "there can be no recovery for costs and attorney's fees incurred in the prosecution of an action brought to establish the right to indemnification." (Sacks Allianz Mem. of Law at 3 n.5.) See Hooper Assoc., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491 (1989).

In addition, Allianz is entitled to compensation for the delay in Sacks's payment of the amounts owed pursuant to the lease agreement's indemnification provision. The Court therefore awards Allianz prejudgment interest at the statutory rate of nine percent, from the date of the settlement of the Hagaman Action. See N.Y. C.P.L.R. §§ 5001(b) and 5004; Turner Const. Co. v. American Mfrs. Mut. Ins. Co., 485 F. Supp. 2d 480, 490 (S.D.N.Y. 2007) ("under New York law, the awarding of interest on breach of contract claims . . . is non-discretionary"); Hartford Fire Ins. Co. v. Jainulabdeen, No. 06 Civ. 2171 (ENV)(KAM), 2007 WL 1028930, at *5-6 (E.D.N.Y. Mar. 30, 2007) (Report and Recommendation) (noting that "[i]n cases involving equitable subrogation, pre-judgment interest is to be awarded at the court's discretion" but that "even on a claim with equitable underpinnings pre-judgment interest would be mandatory where the only relief sought was compensatory damages," and that the appropriate date for interest calculations to begin is the date on which the insurer made payment under the policy (internal quotation marks, citations and alterations omitted)).

Allianz is directed to file with the Clerk of Court and serve upon Sacks's counsel (with a courtesy copy provided for Chambers), by no later than **October 4, 2010**, a sworn affidavit enumerating costs and fees incurred in the underlying Hagaman Action and the date upon which it made payment pursuant to the settlement of the Hagaman Action.

The ERII Action

*The "Occurrence" Underlying Sacks's Insurance Claim*

Sacks seeks summary judgment on his claim for declaratory judgment, and opposes ERII's motion for summary judgment, on the ground that ERII is obligated to indemnify him for any liability incurred in the Allianz Action. Sacks asserts that his alleged emerging awareness of his potential liability in 2007, and *not* the underlying accident which undisputedly occurred three years before Sacks became an insured under the 2007 Policy, is the event that triggers his right to indemnification.

Relevant here is whether the ERII Policy was an "occurrence-based" policy or a "claims-made" policy. "Unlike 'claims-made' policies in wide use today, which require the assertion of a claim against the insured during the policy period, . . . 'occurrence-based' policies respond to its liabilities arising out of bodily injury or property damage that took place during the time that such policies were in effect, even if the claim is not made until years after the termination of the policy." Stonewall Ins. Co. v. Asbestos Claims Management Corp., 73 F.3d 1178, 1192 (2d Cir. 1995); Southern N.J. Rail Group, LLC v. Lumbermen's Mut. Casualty Co., No. 06 Civ. 4946(LAK)(AJP), 2007 WL 2296506 at *10 n.16 (S.D.N.Y. Aug. 13, 2007) ("A claims made and reported policy is in contrast to an 'occurrence' policy, which protects the insured from liability for acts committed during the policy period regardless of when claims arise based on those acts." (internal quotation marks and citations omitted)).

Sacks does not dispute that the 2007 Excess Policy is an occurrence-based policy. (See Sacks's Memorandum of Law in Support of his Motion for Summary Judgment in the ERII Action at 7.) Rather, he claims that the term "occurrence," as used in the policy, is ambiguous and could encompass the filing of a claim. Based upon this supposed ambiguity, he argues that the policy must be strictly construed against ERII. However, the language is plain and unambiguous:

"We cover damages a covered person is legally obligated to pay for personal injury or property damage, caused by an <u>occurrence</u> . . . in excess of damages covered by the underlying insurance . . ." and "occurrence" is defined within the policy as "a <u>loss or accident</u> to which this insurance applies <u>occurring within the policy period</u> . . . ." (ERII 56.1 St. ¶¶ 22-23 (emphasis added).) The 2007 Excess Policy is an occurrence-based policy, and the relevant "occurrence" is the accident on December 15, 2003. No rational jury could find otherwise. Because Sacks was not an insured under the 2003 Excess Policy, he is not entitled to indemnification by ERII.

*<u>Sacks May Not Use Estoppel to Fabricate Insurance Coverage Where None Exists</u>*

In the ERII Action, Sacks reiterates his argument, made in the Allianz Action, that because the insurance company – this time, ERII – did not timely disclaim coverage, it should now be estopped from denying coverage. For the same reasons that his argument failed in the Allianz Action, <u>see</u> <u>supra</u>, it fails here.

CONCLUSION

Allianz's Motion for Summary Judgment is granted in part and denied in part. Allianz is entitled as a matter of law to recover $975,000, representing the amount it paid to settle claims arising from Sacks's accident in December, 2003, as well as the costs and attorney's fees it incurred in connection with the underlying Hagaman Action. Insofar as Allianz seeks payment of costs and fees associated with the instant action, however, it is not entitled to recover them and, consequently, Allianz's motion is denied and Sacks's is granted to that limited extent. In the ERII Action, Sacks's Motion for Summary Judgment is denied in its entirety, and ERII's motion for summary judgment is granted in its entirety.

This Memorandum Opinion and Order resolves docket entry nos. 45, 49 and 59 in case No. 08 Civ. 563, and docket entries nos. 18 and 23 in case No. 08 Civ. 8902.

The Clerk of Court is respectfully directed to enter judgment dismissing the complaint in the ERII Action (No. 08 Civ. 8902).

Allianz is directed to file with the Clerk of Court and serve upon Sacks's counsel by no later than **October 6, 2010**, a sworn affidavit enumerating costs and fees incurred in the underlying Hagaman Action and the date upon which it made payment pursuant to the settlement of the Hagaman Action. Any objection to the amounts requested must be served and filed by **October 20, 2010**. Courtesy copies of the submissions must be provided for Chambers.

SO ORDERED.

Dated: New York, New York
September 23, 2010

/s/ LAURA TAYLOR SWAIN
United States District Judge